Angela PALIOMETROS, an
individual, Appellee

v.

Diego LOYOLA, an individual; Michael Geyer, an individual; Jason Diehl, an individual; Zachary Pletcher, an individual; Sigma Tau Gamma, Inc., a corporation; Sigma Tau Gamma, Pi Chapter, an unincorporated association; Michael Geyer, Trustee ad Li-

tem; Edwin L. Parsons, individually and D. Terry Keeney, individually, t/d/b/a Ligonier Gardens, a Pennsylvania partnership successor to Fort Ligonier Motor Lodge, a Pennsylvania partnership

Appeal of Edwin L. Parsons, individually and D. Terry Keeney, individually, t/d/b/a Ligonier Gardens, a Pennsylvania partnership successor to Fort Ligonier Motor Lodge, a Pennsylvania partnership, Appellants.

Superior Court of Pennsylvania.

Argued April 25, 2007.

Filed Aug. 13, 2007.

Reargument Denied Oct. 10, 2007.

Stephen J. Poljak, Pittsburgh, for Keeney, appellant.

Timothy B. Kinney, Greensburg, for Paliometros, appellee.

BEFORE: McCAFFERY, DANIELS and POPOVICH, JJ.

OPINION BY DANIELS, J.:

¶ 1 This is an appeal from an Order entered by the trial court on August 3, 2006, as amended by its Order of August 25, 2006, denying Appellants' Motion for Post–Trial Relief, and denying Appellants' request for a remitittur. The Amended Order of August 25, 2006 merely molded the verdict and entered judgment in favor of Appellee in the amount of $745,172.17. Appellants' Motion for Post–Trial Relief was based upon their assertions that they owed no legal duty to Appellee with respect to her claim of Innkeeper's Liability, and that there was no evidence as to causation in any event. While numerous Defendants are named in the Complaint, the only Appellants are the co-owners of Ligonier Gardens.

¶ 2 A review of the Statement of the Case and Counterstatement of the Case in the parties' Briefs indicates that the parties are essentially in agreement as to the evidence presented at trial.

## I.  FACTUAL BACKGROUND

¶ 3 Appellee (Plaintiff below) presented a claim for damages as a consequence of physical and emotional injuries sustained by her by reason of a sexual assault that was committed upon her by the Individual Defendant below, Diego Loyola, on the premises of the Appellants' motor lodge or motel. Defendant below, Sigma Tau Gamma, Inc., a college fraternity, rented two (2) rooms at the motel for the purpose of giving a party. The party started on October 16, 1998, and continued into the early morning hours of October 17, 1998. Appellee was invited to the party by a fraternity member. Despite the fact that most of the guests at the party were under the age of twenty-one (21) years, alcoholic beverages were served to the invited guests by the Defendant fraternity.

¶ 4 Between the time of Appellee's arrival at the party, on the evening of October 16, 1998, and the time of the sexual assault in the early morning hours of October 17, 1998, Appellee had consumed four (4) mixed drinks containing alcohol. Individual Defendant Loyola, who was not previously known to Appellee, was also a guest at the party.

¶ 5 The only actual employee of the Appellant motel was Appellant Parsons, one

of the co-owners. Parsons left the motel on the evening of October 16, 1998 before any guests had arrived at the fraternity party, and did not return to the motel until after he was notified by the police that the sexual assault had occurred.

¶ 6 Sometime during the evening of October 16, 1998, officers from the Ligonier Police Department arrived at the motel in response to a call from someone who complained about noise. The police found numerous incidents of underage drinking and, in fact, had to call for an ambulance to attend to two (2) intoxicated guests at the party. The police did not order the guests to leave the party or the motel premises because they felt that such conduct was not within the scope of their authority. They did, however, confiscate the alcoholic beverages found upon the premises.

¶ 7 At trial, Appellee testified that while she was not intoxicated, she was otherwise not feeling well and, therefore, entered into an unoccupied room that had been rented from Appellants by the Defendant fraternity and sat on the edge of the bed. Shortly thereafter, she "passed out." Upon regaining consciousness, she saw a person (whom she later identified as Individual Defendant Loyola) in the bed with her, who was kissing her face and neck. He was also removing her skirt. She attempted to resist physically and verbally but lost consciousness again. When she regained consciousness, she was naked. She had not removed her own clothes. Defendant Loyola was attempting to have sexual relations with her and, again, Appellee "passed out." Upon awakening, she saw Defendant Loyola putting his clothes on. She quickly dressed herself and left the room. She found her escort, who took her home. Defendant Loyola was later charged with various crimes. He pleaded guilty to a second degree misdemeanor charge of indecent assault.

¶ 8 At the civil trial below, Appellee produced expert testimony as to the industry standard of care for innkeepers. Such expert testified as to the manner in which, in his opinion, the Appellant motel owners had departed from the requisite standard of care. Appellants presented no expert testimony in response.

¶ 9 As to damages, Appellee produced the testimony of a licensed psychologist who noted that the hospital emergency room records documented that Appellee had sustained identifiable physical injuries as a result of the sexual assault. That psychologist further opined that Appellee suffers from post-traumatic stress disorder and will require periodic psychological treatment for the rest of her life. Appellee herself described the incident in detail, and how it has affected her. Her husband (whom she married sometime after the incident) and her father also testified as to the adverse effects of the assault upon Appellee. There was no contrary medical testimony (or any medical testimony whatsoever) presented by Appellants at trial.

¶ 10 Appellant Parsons, upon cross-examination, testified that had he been physically on the premises and observed the underage drinking (the fact of which was not contradicted), he would have refused accommodations to the Defendant fraternity and its guests. Parsons further testified that he wished he had done things differently on the date of the incident.

¶ 11 Against this evidentiary background, the jury rendered a verdict in favor of Appellee in the amount of $590,000.00, which was molded to the sum of $548,700.00 because of a finding of comparative negligence of seven percent (7%) on the part of Appellee. The trial court, on Motion of Appellee, also entered judgment for Delay Damages, under Pa. R.C.P. 238, in the amount of $196,472.17, plus appropriate interest.

## II. *STANDARD OF REVIEW*

¶ 12 Our standard of review of the denial of post-trial relief by a trial court following a jury's verdict is as follows:

We will reverse a trial court's decision to deny a motion for a new trial only if the trial court abused its discretion. *See Harman v. Borah,* 562 Pa. 455, 756 A.2d 1116, 1121–1122 (Pa.2000). We must review the court's alleged mistake and determine whether the court erred and, if so, whether the error resulted in prejudice necessitating a new trial. *See id.* at 1122–1123. If the alleged mistake concerned an error of law, we will scrutinize for legal error. *See [id.]* at 1123. Once we determine whether an error occurred, we must then determine whether the trial court abused its discretion in ruling on the request for a new trial. *See id.* "An abuse of discretion exists when the trial court has rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias, or ill will." *Id.* at 1123. *Petrecca v. Allstate Insurance Company,* 797 A.2d 322, 324 (Pa.Super.2002).

*Stalsitz v. Allentown Hospital, et al.,* 814 A.2d 766, 771 (Pa.Super.2002).

## III. *ISSUES ON APPEAL*

¶ 13 Appellants seek post-trial relief on the following grounds:

A. The lack of causation, *i.e.,* that there was no evidence presented by Plaintiff that Ligonier Gardens had a duty to Plaintiff [Appellee], and that there was no causation between the fraternity party and the subsequent assault on Plaintiff [Appellee]; and

B. The refusal of the trial court to grant a remitittur.

(*See* Brief for Appellants, p. 4).

## IV. *WAIVER OF OBJECTION TO DELAY DAMAGES*

¶ 14 It should be noted that Appellants objected to the imposition of Delay Damages in the trial court. However, that issue does not appear in Appellants' Statement of Questions involved in this Appeal and is, therefore, waived. Consequently, such issue will not be considered or addressed by this Court on appeal.

## V. *DISCUSSION*

### A. *Innkeeper's Duty and Proximate Causation*

¶ 15 Appellants have asserted that the trial court erred in denying their Post–Trial Motion based upon their claims as to the absence of any duty on their part and the lack of proximate cause. We find that the facts in this case are strikingly similar to those that were involved in *Rabutino, Administratrix of the Estate of William Impagliazzo v. Freedom State Realty Co., Inc., et. al.,* 809 A.2d 933 (Pa.Super.2002), where a nineteen (19) year-old decedent was shot to death on the fifth floor of the Travelodge Hotel in Philadelphia, which was owned and operated by the defendant in that case. Decedent had been among an estimated number of two hundred (200) partygoers under the age of twenty-one (21) years, attending beer parties on several floors of the hotel. Racial tension developed between some Hispanic attendees and Italian–American youths. One such youth, Jose Nunez, fired two (2) shots from his handgun into a crowd where decedent was standing, killing the decedent. The decedent's administratrix filed suit alleging negligence under Sections 343 and 344 of the Restatement (Second) of Torts. The trial court entered summary judgment against the administratrix in favor of all

Defendants. This Court reversed as to all Defendants except Wells Fargo Guard Services.

¶ 16 In an extensive analysis in *Rabutino,* this Court relied upon § 344 of the Restatement (Second) of Torts, which provides:

> § 344. **Business Premises Open to Public: Acts of Third Persons or Animals**
>
> A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to
>
> (a) discover that such acts are being done or are likely to be done, or
>
> (b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it.

¶ 17 In discussing the import of that Section 344, we stated in *Rabutino:*

> In order for liability to be imposed upon a Defendant in a negligence action, the Plaintiff must establish the following four elements: (1) the existence of a duty or obligation recognized by law; (2) a failure on the part of the Defendant to conform to that duty, or a breach thereof; (3) a causal connection between the Defendant's breach and the resulting injury; and (4) actual loss or damage suffered by the complainant. *T.A. v. Allen,* 447 Pa.Super. 302, 669 A.2d 360 (1995). The basis for the order granting summary judgment was that Rabutino supplied insufficient evidence of both a breach of duty owed Impagliazzo and causation. We, therefore, examine each element in turn.

> Generally, there is no duty to control the acts of a third party unless the 'Defendant stands in some special relationship with either the person whose conduct needs to be controlled or ... with the intended victim of the conduct, which gives the intended victim a right to protection.'" *Brezenski v. World Truck Transfer, Inc.,* 755 A.2d 36, 40 (Pa.Super.2000). All parties agree that Rabutino established the existence of a special relationship with evidence that Impagliazzo was a business invitee of Appellee Freedom Realty's. *See T.A., supra,* (citing Restatement (Second) of Torts, § 314A(2) and (3), which recognize, respectively, the special relationships between innkeepers and guests, and between other possessors of land who hold it open to the public and the members of the public who enter in response to the invitation).

> It follows, then, that Freedom Realty owed Impagliazzo a duty owed to any business invitee, namely, that it would take reasonable precaution against harmful third party conduct that might be reasonably anticipated. *Id.; See also Moran v. Valley Forge Drive-in Theater, Inc.,* 431 Pa. 432, 246 A.2d 875 (1968) (adopting as Pennsylvania law innkeeper liability expressed in Restatement (Second) of Torts, § 344, *infra*).

> > The reason is clear; places to which the general public are invited might indeed anticipate, either from common experience or known fact, that places of general public resort are also places where what men can do, they might. One who invites all may reasonably expect that all might not behave, and bears responsibility for injury that follows the absence of reasonable precaution against that common expectation. *Feld v. Merriam,* 506 Pa., 383, 391, 485 A.2d 742, 745 (1984).

*Rabutino,* 809 A.2d at 938–939.

¶ 18 Here, the co-owner of Ligonier Gardens and its only actual employee, Appel-

lant Parsons, knew that he was renting rooms to a fraternity for the purpose of the fraternity's holding a party with invited guests, most of whom were under the age of twenty-one (21). Notwithstanding such knowledge, Appellant Parsons, as a co-owner and the only employee of Appellants, left the premises prior to the arrival of any of the fraternity party guests at the motor lodge, leaving the entire premises totally unsupervised by any personnel of Ligonier Gardens.

¶ 19 Thus, we see no significant difference between the evidence in the case at Bar and that which we addressed in the *Rabutino* case. We similarly find that there was no intervening force or superseding cause preventing the application of Section 344 of the Restatement (Second) of Torts to the instant matter.

¶ 20 For, as we stated in *Rabutino:*

Here, though Nunez's wrongful act constituted an intervening force, a jury, looking back to the circumstances of the evening, may reasonably determine that it was not so extraordinary or unforeseeable so as to have been a superseding cause terminating the liability of Freedom Realty. Undoubtedly, the degree of violence resorted to by Nunez is shocking. Nonetheless, we must be mindful that the peculiar way in which an injury may result is not material *so long as there was a foreseeable probability of injury to one within the ambit of danger.* "If [an] actor's conduct is a substantial factor in bringing about harm to another, the fact that the actor neither foresaw nor should have foreseen the extent of the harm or the manner in which it occurred does not prevent him from being liable."

*Id.* at 942 (Emphasis Added).

¶ 21 So too here, as in *Rabutino,* Appellants, as innkeepers, knowing that a fraternity party was going to take place where there undoubtedly would be underage drinking going on, owed to Appellee the affirmative duty to exercise reasonable care under the circumstances, and to take precautions by having some supervisory personnel physically present on the premises to monitor both the premises and the conduct occurring upon the same in order to prevent any possible injury to Appellee, as a business invitee on their premises. Consequently, we agree with the trial court's conclusion that Appellants breached their "duty of care under the circumstances and in [their] position as an innkeeper."

## B. *REMITITTUR*

¶ 22 Appellants finally contend that a remitittur should have been granted because the verdict was not within the limits of fair and reasonable compensation, and further suggest that partiality, prejudice, or mistake had influenced the amount of the jury's damages award.

¶ 23 Our standard of review in considering the reversal of a trial court's order denying a remitittur is to determine whether the trial court abused its discretion or committed an error of law in reaching such decision. *See Smalls v. Pittsburgh–Corning Corp.,* 843 A.2d 410 (Pa.Super.2004). In that regard, this Court, in *Mecca v. Lukasik,* 366 Pa.Super. 149, 530 A.2d 1334 (1987), discussed the factors to be considered in determining whether or not a verdict is excessive:

The grant or refusal of a new trial because of the excessiveness of the verdict is within the discretion of the trial court. *Hall v. George,* 403 Pa. 563, 170 A.2d 367 (1961). This court will not find a verdict excessive unless it is so grossly excessive as to shock our sense of justice. *Kravinsky v. Glover,* 263 Pa. Superior Ct. 8, 396 A.2d 1349 (1979). We begin

with the premise that large verdicts are not necessarily excessive verdicts. Each case is unique and dependent on its own special circumstances and a court should apply only those factors which it finds to be relevant in determining whether or not the verdict is excessive. *Mineo v. Tancini*, 349 Pa. Superior Ct. 115, 502 A.2d 1300 (1986). A court may consider the following factors, *inter alia:*

> (1) the severity of the injury; (2) whether the Plaintiff's injury is manifested by objective physical evidence or whether it is only revealed by the subjective testimony of the Plaintiff (and, herein, the court pointed out that where the injury is manifested by broken bones, disfigurement, loss of consciousness, or other objective evidence, the courts have counted this in favor of sustaining a verdict); (3) whether the injury will affect the Plaintiff permanently; (4) whether the Plaintiff can continue with his or her employment; (5) the size of the Plaintiff's out-of-pocket expenses; and (6) the amount Plaintiff demanded in the original complaint. *Kemp v. Philadelphia Transportation Co.*, 239 Pa. Superior Ct. 379, 361 A.2d 362 (1976).

*Id.* at 1340.

¶ 24 Only four (4) of these factors are of any relevance with respect to the jury's monetary award in this case.

### 1. *The Severity of the Injury*

¶ 25 While all conduct involving assault and battery is to be condemned, it is difficult to imagine a more painful, degrading, or emotionally troubling experience than an unwanted sexual assault on the body of a young defenseless female individual, such as Appellee herein. It is abundantly clear that the assault by Defendant Loyola lasted a considerable period of time, with Appellee experiencing the human emotions of fright, fear, shock, shame, and disgust during the attack. Moreover, it is also clear from Appellee's trial testimony that she was conscious of being physically violated by Defendant Loyola during this assault.

¶ 26 Appellee suffered physical injury as reflected by the testimony of her licensed psychologist and as documented by the hospital emergency room records. Appellee has been diagnosed with post-traumatic stress disorder, which will require her to undergo medical treatment for the rest of her life. Finally, both Appellee's husband and her father have detailed the ways in which this incident has adversely affected Appellee. Under such circumstances, Appellant has clearly demonstrated the severity of her injuries. *See Connolly v. Philadelphia Transp. Co.*, 420 Pa. 280, 216 A.2d 60 (1966); *Guzman v. Bloom*, 413 Pa. 576, 198 A.2d 499 (1964); *LaFace v. Brentwood Motor Coach Co.*, 387 Pa. 18, 127 A.2d 93 (1956); and *Kane v. Scranton Transit Co.*, 372 Pa. 496, 94 A.2d 560 (1953).

### 2. *Physical Manifestation of Injury*

¶ 27 There was extensive testimony in the trial record by Appellee's licensed psychologist as to Appellee's having sustained post-traumatic stress disorder and its consequences. (N.T. 170–229). We have carefully reviewed this testimony as to post-traumatic stress disorder, which was unchallenged, and can fairly summarize it as follows:

> (a) it is an emotional condition caused by a traumatic event;

> (b) symptoms include re-experiencing of the trauma through nightmares, obsessive thoughts and flashbacks;

> (c) avoidance of situations, people and/or objects which remind the patient about the traumatic event;

(d) increased anxiety in general with a heightened startle response; and

(e) treatment consists of ongoing psychological counseling.

*See Guzman, supra,* and *Connolly, supra.*

### 3. Permanency

¶ 28 The permanency of Appellee's emotional and continuing psychological post-traumatic injuries was confirmed by Appellee's expert psychologist without rebuttal testimony of any kind whatsoever—medical or otherwise—from Appellants; that psychologist also opined that Appellee would need medical treatment for her post-traumatic stress disorder for the rest of her life, and that such injury is permanent in nature. *See Durdella v. Trenton—Philadelphia Coach Co.,* 349 Pa. 482, 37 A.2d 481 (1944).

### 4. Out–of–Pocket Expenses

¶ 29 While there is no reference to the amount of past or future out-of-pocket medical expenses in the record below, the case *sub judice* is strikingly similar to *Botek v. Mine Safety Appliance Corp.,* 531 Pa. 160, 611 A.2d 1174 (1992), where plaintiff suffered post-traumatic stress disorder without physical injury, had little or no monetary damages, and had very little medical treatment. He did not see a doctor until one (1) year after the incident causing his symptoms, but such symptoms continued until the time of trial, some seven (7) years after the original incident. Expert medical testimony confirmed that plaintiff had experienced the classic symptoms of post-traumatic stress disorder for all of that period of time. There, the jury returned a verdict of $350,000.00, with the later addition of Delay Damages. This Court found the verdict to be excessive *(Botek v. Mine Safety,* 412 Pa.Super. 641, 594 A.2d 778 (Pa.Super.1991)), but the Supreme Court of Pennsylvania reversed, stating:

> We have held on numerous occasions that whether to grant a new trial because of excessiveness or inadequacy of the verdict is a matter within the sound and peculiar discretion of the trial court, which has observed the demeanor of the witnesses, and its decision will be sustained by an appellate court in the absence of a clear or gross abuse of discretion or error of law which controlled the verdict or the outcome of the case. (Citations Omitted). Here, we think that the trial court judge (and the jury) acted reasonably and that they were not guilty of an abuse of discretion. Certainly the Superior Court was entitled to disagree with their conclusion on the merits, but the Superior Court was not free to *substitute* their judgment for that of the trial court under our decisions.

*Botek,* 531 Pa. at 165–166, 611 A.2d at 1176.

¶ 30 Moreover, this Court, in *Kemp v. Philadelphia Transportation Co.,* 239 Pa.Super. 379, 361 A.2d 362 (Pa.Super.1976), has stated that:

> The mere disparity between the amount of out-of-pocket expenses and the amount of the verdict does not in itself justify the granting of a new trial (because the verdict was excessive). *Zawoyski v. Pittsburgh Rys.,* 415 Pa. 563, 566, 204 A.2d 463, 465 (Pa.1964).

*Id.,* at 365.

¶ 31 From our review of the record and the evidence presented to the jury during the trial of this matter, and upon our examination of the factors to be considered in determining whether or not a jury's verdict is excessive, we conclude that the trial court's determination that the jury's verdict was not excessive was in accord with the appellate court decisions in Pennsylvania and should, therefore, be af-

firmed. The denial of a remitittur by the trial court was entirely proper, in that Appellee has suffered a heinous sexual assault that caused her both physical injuries and serious post-traumatic stress disorder, the latter of which is permanent in nature and will require life-long medical treatment.

¶ 32 Orders affirmed.

¶ 33 POPOVICH, J. files a DISSENTING OPINION.

## DISSENTING OPINION BY POPOVICH, J.:

¶ 1 The majority states that "Appellants, as innkeepers, knowing that a fraternity party was going to take place where there undoubtedly would be underage drinking going on, owed to Appellee the affirmative duty to exercise reasonable care under the circumstances, and to take precautions by having some supervisory personnel physically present on the premises to monitor both the premises and the conduct occurring upon the same in order to prevent any possible injury to Appellee, as a business invitee on their premises." Majority opinion, at 10. From this, the majority concludes that Appellants breached their duty of care under the circumstances and in their position as an innkeeper. I respectfully disagree.

¶ 2 Negligence has four elements: duty, breach of the duty, a causal connection between the breach and the resulting injury, and actual damages. *T.A. v. Allen*, 447 Pa.Super. 302, 669 A.2d 360 (1995). In the present case, I would find that Appellee failed to establish a causal connection between Appellants' breach of duty and her injury.

¶ 3 In analyzing section 344 of the Restatement of Torts (Second), this Court stated that a business owed a duty to any business invitee, namely, that it would take reasonable precaution against harmful third party conduct that might be *reasonably anticipated*. *Rabutino, Administratrix of the Estate of William Impagliazzo v. Freedom State Realty Co., Inc., et. al.*, 809 A.2d 933, 939 (Pa.Super.2002) (emphasis added). I believe that Appellee failed to prove that Appellants should have reasonably anticipated a sexual assault at the fraternity party based on the conduct of the partygoers. While there were underage persons consuming alcohol, their conduct, along with the persons of age, could not, in my mind, have caused Appellants to reasonably anticipate Diego Loyola's sexual assault of Appellee. Further, the sexual assault occurred in an unoccupied room that had been rented by the fraternity. It did not occur in an area in which Appellants' personnel would have been patrolling. These factors, I believe, distinguish it from *Rabutino*, in which the business could have reasonably anticipated a shooting where racial tensions were readily observable and gunshots were previously heard.

¶ 4 Accordingly, I do not find a causal connection between Appellants' failure to supervise the premises during the party and the sexual assault of Appellee by Diego Loyola in a room at the motel rented by the fraternity. For this reason, I respectfully dissent.