## Wimberly v. Katruska

C.P. of Allegheny County, No. AR-11-004777.

*Wayne M. Chiurazzi*, for plaintiffs.
*Miles Kirshner*, for defendants.

WETTICK, *J.*, May 23, 2012—Plaintiffs' petition to enforce settlement is the subject of this opinion and order of court.

Through a telephone conversation between counsel, the claims of Anna B. Wimberly ("plaintiff") were settled for $9,000. The issue that is the subject of this opinion and order of court is whether defendant may condition payment upon plaintiff providing a no-lien letter from Medicare.

Pursuant to the Medicare secondary payer act ("MSPA"), Medicare is a secondary payer meaning that Medicare can only pay bills not paid by a "primary payer." If Medicare makes a payment and a primary payer is identified, the primary payer must reimburse the United States. 42 U.S.C. §1395y(b)(2). The MSPA identifies an automobile or liability insurance policy as a primary payer. 42 U.S.C.

§1395y(b)(2)(A)(ii). This means that if the insurance company has made a settlement payment and it is later discovered that Medicare had already made a payment for the same services or items, the insurance company which paid the settlement amount can be required to reimburse Medicare, pursuant to regulations promulgated by the U.S. Department of Health and Human Services to implement the MSPA. These regulations give Medicare and centers for Medicare services ("CMS") a direct right of action to recover from any primary payer. 42 C.F.R. §411.24(e).

1.

Defendant's first argument is that, as a matter of law, the insurance company is entitled to withhold payment until Medicare has issued a no-lien letter. This is the only manner by which an insurance company and its insured may avoid double payments. However, this argument is without merit as a result of the opinion of the Pennsylvania Superior Court in *Zaleppa v. Seiwell*, 9 A.3d 632 (Pa. Super. 2010).

*Zaleppa* was a personal injury action in which the jury returned a verdict in the amount of $15,000. The defendant alleged that the trial court erred in denying her post-trial motion which requested that the court enter an order directing her to pay the verdict either (1) by naming Medicare, along with Zaleppa and her attorneys, as payees on the draft satisfying the verdict or (2) paying the verdict into court pending notification from Medicare that all outstanding Medicare liens have been satisfied. The trial court denied the defendant's motion. The Superior Court

affirmed.

The Superior Court recognized that the MSPA assigns primary responsibility for medical bills of Medicare recipients to private health plans when a Medicare recipient is also covered by private insurance. This means that the private insurer may be required to pay for any treatment for which Medicare has already paid by reimbursing Medicare for the expense. Thus, if an outstanding Medicare lien existed, the MSPA gave CMS a direct action against the defendant's insurer to reimburse Medicare.[1]

In other words, the court recognized that if it denied the defendant's request for post-trial relief, it would be subjecting the insurance company to the possibility of a double payment. Nevertheless, the court ruled that the defendant failed to offer any legal basis for the post-trial relief that would prevent a double recovery.

The court based its decision on settled Pennsylvania case law which obligates a party to satisfy a judgment once it has been entered. In order to satisfy a judgment for monetary damages, payment of the underlying debt must be tendered in full and must be payable to the parties specified in the judgment. This case law controls this litigation unless there are provisions within the MSPA or other federal legislation that alter Pennsylvania case law.

Through her motion for post-trial relief, the defendant argued that state law does not apply because the defendant

---

1. This legislation also gives CMS a direct action against the plaintiff, the entity that received the payment and the defendant. However, CMS may elect to pursue only the defendant's insurer.

was properly protecting the interests of the United States government. The court rejected this argument stating that the statutory scheme established by the MSPA was not designed to enable private parties to act on behalf of the United States government as a "private attorneys general." Id. at 639 (citation omitted). Under the MSPA, only the United States government is authorized to pursue its own right to reimbursement.

### 2.

In his answer in opposition to the petition to enforce settlement (¶¶ 1 and 6 and exhibits A-E), defendant raises a second ground: Defendant's counsel avers that prior to the parties reaching an agreement as to the settlement amount, plaintiff's counsel, through letters and email, agreed that payment would be conditioned on plaintiff's counsel obtaining documentation from Medicare, stating whether plaintiff is currently receiving Medicare benefits and what, if any, benefits were paid that were related to the accident. Counsel for plaintiff, on the other hand, avers that he never agreed to allow defendant to withhold the settlement funds because of a possible Medicare lien.

A settlement is a contract. The parties may agree that the settlement amount will not be paid until information regarding Medicare is provided to the defendant. However, unless there is a specific agreement conditioning payment on a no-lien letter, it is a matter of contract law that a defendant cannot subsequently raise new conditions regarding the payment that the defendant agreed to make.

I considered a similar matter in *Export Boxing &*

*Crating, Inc. v. Tech Met*, 150 P.L.J. 35 (2001). In that case, on the eve of trial, the plaintiffs agreed to the settlement offer by one of two joint tort-feasors. Subsequently, the plaintiffs filed a motion to enforce the settlement.

Through their motion, the plaintiffs sought a court order compelling the release of the settlement funds because the plaintiffs had furnished executed pro tanto releases. The settling joint tort-feasor, on the other hand, sought a ruling that the plaintiffs were not entitled to the settlement funds until the plaintiffs executed pro rata releases.

At oral argument on the motion, counsel for the parties stipulated that there was a binding settlement. In other words, no attorney was taking the position that I should set aside the agreement based on a failure to agree upon a material term. Each of the witnesses who participated in the settlement discussions testified that no one used the term "pro rata release" or "pro tanto release" in any of the discussions. In other words, the type of release was not discussed.

I stated:

A settlement agreement is a contract governed by the general rules of contract interpretation. See *Friia v. Friia*, 780 A.2d 664, 668 (Pa. Super. 2001). Where the intentions of the parties cannot be gleaned from the language of the agreement, under general rules of contract interpretation a court should determine whether there are common expectations that would reveal the intentions of the parties.

> In this case, this is a relatively easy task. When the parties arrived at a dollar amount that SPEDD [the settling defendant] would pay, it would have been apparent to counsel for plaintiffs that SPEDD expected a release that would eliminate SPEDD's exposure to any further claims raised in this litigation. Obviously, plaintiffs' counsel understood that plaintiffs would execute a release which would prevent plaintiffs from pursuing against SPEDD, in this or any other litigation, any claims that plaintiffs have raised against SPEDD in this litigation. Plaintiffs would also have understood that SPEDD expected that the payment it was making was the only money that SPEDD would be paying to plaintiffs, either directly or indirectly through payments made to a third party. Thus, plaintiffs would have understood that they could not pursue claims against any other parties to this litigation for which SPEDD would be ultimately liable.

*Id.* at 36 (footnote omitted).

Since the pro tanto release did not eliminate the possibility of a verdict that would result in the settling tort-feasor owing money to the non-settling tort-feasor, contrary to the common expectation that payment of the settlement amount was to eliminate any risk of liability, I ruled that unless the plaintiffs could establish an agreement under which the plaintiffs would provide only pro tanto releases, any settlement agreement would be construed to require the plaintiffs to execute pro rata releases.

I use this approach in the present case. The common

expectation is that a defendant will promptly pay the settlement amount. A settlement agreement (written or oral) will be construed in this fashion unless the defendant can establish that the parties reached a different agreement.

Because defendant contends that the parties' agreement conditioned payment on receipt of a no-lien letter, a rule will issue to show cause why the settlement agreement should not be enforced. Since the only dispute is over whether payment was conditioned on a no-lien letter, it is defendant's burden to establish an agreement that the payment was conditioned upon a no-lien letter.

For these reasons, I enter the following order of court:

## ORDER OF COURT

On May 23, 2012, it is hereby ordered that a rule is issued to show cause why plaintiffs' petition to enforce settlement should not be granted.

These proceedings will be governed by Pa.R.C.P. No. 206.7.

Depositions shall be completed within thirty (30) days, and an argument will be held on July 6, 2012 at 10:00 A.M. o'clock, 815 City-County Building.

Defendant has the burden of proving that payment of the agreed-upon settlement amount was conditioned upon defendant's receipt of a non-lien letter.