J-A17006-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| SHIRLEY GASKILL | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOAN MCILVAIN | : | No. 556 EDA 2020 |

Appeal from the Judgment Entered March 16, 2020
In the Court of Common Pleas of Delaware County Civil Division at
No(s):  No. 2018-005598

BEFORE:  BOWES, J., McCAFFERY, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY BOWES, J.:          **FILED OCTOBER 26, 2020**

Shirley Gaskill appeals from the judgment entered against her and in favor of Joan McIlvain following a non-jury trial concerning ownership and possession of real property.  We affirm.

Succinctly, the facts are as follows.  Ms. Gaskill wished to purchase a home for herself and her children, but did not qualify for a mortgage loan.  In 2012, her mother, Ms. McIlvain, agreed to obtain a loan and purchase the house in her own name, and Ms. Gaskill would provide the funds to Ms. McIlvain to make the resulting payments.  In 2018, Ms. Gaskill filed a complaint against Ms. McIlvain alleging that Ms. McIlvain had failed to uphold an additional agreement to transfer title to the property into both of their names as joint tenants with right of survivorship, provided that Ms. Gaskill demonstrated her ability to make the payments and maintain the property.  Ms. Gaskill sought an order requiring Ms. McIlvain to convey title to her as a

joint tenant.  Ms. McIlvain filed an answer denying that Ms. Gaskill had made

the payments in accordance with the agreement, denying that the agreement

had included adding Ms. Gaskill's name to the deed, positing that the statute

of frauds barred enforcement of oral agreements concerning interests in real

property, and a counterclaim in ejectment.

The trial court offered the following summary of the subsequent

procedural history of the case.

> [T]his case first came before the undersigned for a pretrial conference on November 22, 2019.  At the time of the conference, the court inquired regarding the merits of an outstanding petition for relief [filed by Ms. McIlvain to be granted possession of the property].  Counsel for [Ms. Gaskill] responded as follows: "well, my problem right now, Your Honor, is my client is not communicating with me or cooperating with me."  The court advised counsel that it would refrain from addressing the merits of the motion that day and stated that the matter would be rescheduled for a new date.  In doing so, the court relisted the matter for December 20, 2019, a date agreed to by counsel that was in accordance with their respective schedules.
>
> The parties appeared again on December 20, 2019 on [Ms. McIlvain's] petition for special relief.  Counsel for [Ms. Gaskill] appeared and stated: "My client is not communicating with me. She's not responding to correspondence or phone calls.  She is refusing to meet with me.  And she's not here today despite the fact that I told her she was required to appear today for this hearing."  Counsel further advised the court that he was concerned about his client's mental status and stated "my client is not cooperating, she's not cooperating with me, and she she's not paying me either."  The court then asked counsel how much time was needed to continue the trial and both counsel for [Ms. Gaskill] and [Ms. McIlvain] confirmed that they would be ready to proceed to trial on January 9, 2020.  Accordingly, the case was continued again and given a new trial date of January 9, 2020.
>
> On January 9, 2020 the case was called to trial.  Again, [Ms. Gaskill] failed to appear.  Counsel for [Ms. Gaskill] requested a

continuance, and explained that he had spoken to [her] the night before and told her to appear the next day for trial. Counsel informed the court that after he appeared in court in December he had hand-delivered notice to [Ms. Gaskill] of the trial date and had made many phone calls in an effort to reach her to discuss the trial date. . . . [H]e relayed that he had finally reached [Ms. Gaskill] by phone the night before trial. Despite counsel's advice to appear in court, [she] did not appear. Counsel stated that he had a conversation with [Ms. Gaskill] that "was interesting, not necessarily relevant or responsive." Counsel did not provide any cogent reason for her non-appearance. Ultimately, this court denied counsel's request for a continuance and proceeded to trial.

Trial Court Opinion, 3/13/20, at 4-6 (footnotes, citations, and unnecessary capitalization omitted).

At trial, counsel for Ms. Gaskill presented testimony and exhibits to support her claim, while Ms. McIlvain testified to present her version of the agreement and events. At the conclusion of trial, the court indicated that it had considered the evidence, and what testimony Ms. Gaskill would have offered had she appeared, but concluded that the evidence did not warrant an equitable transfer of title. *See* N.T. Trial, 1/9/20, at 80-81. Ms. Gaskill filed a timely post-trial motion, alleging, *inter alia*, that the trial court abused its discretion in denying her January 9, 2020 continuance request. The trial court also received correspondence from Ms. Gaskill's physician which detailed Ms. Gaskill's physical conditions and reported that she had been upset and stressed about family matters when he saw her in December 2019, but offered no "diagnosis or justification that would excuse Appellant from appearing at trial." Trial Court Opinion, 3/13/20, at 7 n.4.

The court denied Ms. Gaskill's post-trial motion, and Ms. Gaskill filed a notice of appeal.[1] The trial court ordered her to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and Ms. Gaskill filed a statement, containing what the trial court described as a "run-on narrative." Trial Court Opinion, 3/13/20, at 1. Nonetheless, the court authored a Pa.R.A.P. 1925(a) opinion addressing the issues Ms. Gaskill presents to this Court:

> 1. Did the trial court abuse its discretion or commit a reversible error when it denied [Ms. Gaskill's] post trial request to vacate the order (verdict) entered on January 10, 2020 and schedule a date when [she] could testify in a non jury trial after receiving a written report from [her] physician outlining [her] medical conditions including a statement by [Ms. Gaskill] to the doctor on December 23, 2019 that "she felt like she was on the verge of a nervous breakdown"?
>
> 2. Did the trial court's refusal to vacate the order (verdict) entered on January 10, 2020 and schedule a date when [Ms. Gaskill] could testify and submit documentary evidence in support of her case constitute a denial of due process under the unusual and special circumstances of this case?

Ms. Gaskill's brief at 5 (unnecessary capitalization omitted).

_____

[1] The appeal was premature, as judgment had not yet been entered on the verdict. Ms. Gaskill subsequently filed a praecipe in the trial court for entry of judgment on the verdict. *See* Order, 4/30/20. Hence, the appeal is deemed properly filed from that judgment. *See* Pa.R.A.P. 905(a)(5) ("A notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof.").

We begin with the relevant legal principles. Since Ms. Gaskill concedes that the trial court did not abuse its discretion in denying her pre-trial request for a continuance on January 9, 2020,[2] the issue is whether the trial court abused its discretion in denying her post-trial request to rescind the verdict and allow Ms. Gaskill to testify. Hence, our standard of review is as follows:

> The general rule is that a court may in its discretion grant a rehearing, but such decisions are peculiarly within the sound discretion of the trial court. A denial of an opportunity for rehearing or reconsideration for the purpose of receiving additional evidence will not ordinarily be disturbed by an appellate court. Reversal is appropriate only if the lower court has committed an abuse of discretion.

*Kruth v. Liberty Mut. Ins. Co.*, 499 A.2d 354, 356 (Pa.Super. 1985) (citations omitted).

"An abuse of discretion exists when the trial court has rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias, or ill will." *Zaleppa v. Seiwell*, 9 A.3d 632, 635 (Pa.Super. 2010) (internal quotation marks omitted). In the context of continuance motions, this Court has explained that the following factors are relevant to reviewing the trial court's decision on a motion to delay resolution of the case: "whether there was prejudice to the opposing party by a delay, whether opposing counsel was

---

[2] *See* Ms. Gaskill's brief at 17. ("In this case there is no evidence and no suggestion by plaintiff that the trial court's denial of plaintiff's request for a continuance on January 9, 2020 was an abuse of discretion.").

willing to continue the case, the length of the delay requested, and the complexities involved in presenting the case." ***Rutyna v. Schweers***, 177 A.3d 927, 933 (Pa.Super. 2018) (*en banc*).

In support of its decision, the trial court noted that Ms. Gaskill had already had the benefit of multiple continuances, yet without explanation repeatedly failed to appear to prosecute her claim. ***See*** Trial Court Opinion, 3/13/20, at 6; N.T. Trial, 1/9/20, at 10-11. Ms. Gaskill offered no timeframe for when she would be ready to appear. ***See*** N.T. Trial, 1/9/20, at 15. Moreover, Ms. Gaskill failed to offer a medical opinion that she suffered from a condition that would preclude or excuse her appearance at trial. ***See*** Trial Court Opinion, 3/13/20, at 7 n.4.

On the other hand, Ms. McIlvain established that she would be prejudiced by further delay. It was undisputed that Ms. Gaskill had not been providing Ms. McIlvain with the money for the aforementioned mortgage payments. At the time of the bench trial, Ms. McIlvain protested that she "does not have a lot of money and cannot afford for this to continue" when she already had "been waiting over a year-and-a-half to get ger house back." ***See*** Trial Court Opinion, 3/13/20, at 6.

Ms. Gaskill posits that the trial court acted unreasonably in denying her request to reopen the case to allow her to be present and offer her testimony because: (1) it was a non-jury trial and there was no compelling reason not to reschedule another trial date; (2) Ms. Gaskill's physician indicated that she

suffers from Type 1 Diabetes, high blood pressure, Dyslipidemia, and Celiac Disease, and websites suggest that these conditions may cause symptoms such as confusion, trouble understanding, mood changes, and anxiety; (3) the trial court could have eliminated the prejudice to Ms. McIlvain by requiring Ms. Gaskill to become current in her payments pending resolution of the trial; (4) there was additional documentary evidence that was not offered at trial due to Ms. Gaskill's failure to appear; (5) assuming what Ms. Gaskill's testimony would have been is not an adequate substitute for observing her testify in open court; and (6) the unusual and special circumstances of the case warranted giving her one more chance to appear and testify. *See* Ms. Gaskill's brief at 18-20.

None of Ms. Gaskill's arguments demonstrates that the trial court made a decision that was "manifestly unreasonable, arbitrary, or capricious,[;] failed to apply the law[;] or was motivated by partiality, prejudice, bias, or ill will." *Zaleppa*, *supra* at 635. On the contrary, the trial court, having already accommodated Ms. Gaskill's non-appearance on multiple prior occasions without requiring justification, considered the relevant factors of the prejudice to Ms. McIlvain, counsel's readiness, and the indefinite nature of the length of time needed, and reasonably and fairly determined that no further delay was warranted. While Ms. Gaskill now points to extraordinary measures the trial court could have taken, we cannot conclude that the trial court abused its discretion in declining to drag this matter out further.

Ms. Gaskill also argues that the trial court's decision denied her due process. In support, she cites cases concerning the right to a hearing, with a meaningful opportunity to be heard, before one is deprived of a property interest. *See* Ms. Gaskill's brief at 21 (citing, *inter alia*, **Matthews v. Eldridge**, 424 U.S. 319, 333 (1976); **Armstrong v. Manzo**, 380 U.S. 545, 552 (1965)). She again suggests that her medical conditions, unknown to counsel prior to trial, explained her failures to appear and presented special circumstances that warranted giving her another opportunity to be heard.

Due process rights do not require that a court actually hear from a litigant before adjudicating a claim, or that it let the litigant dictate the time and manner. Rather, "[t]he fundamental requirement of due process is the **opportunity** to be heard at a meaningful time and in a meaningful manner." **Mathews**, **supra** at 333 (cleaned up, emphasis added). As detailed above, Ms. Gaskill had notice of the scheduled trial dates, the court was open and available for her to appear and present her case, she demonstrated no physical or mental condition that prevented her from appearing, yet she did not appear. Ms. Gaskill was afforded ample opportunities to be heard, but failed to avail herself of them. There was no due process violation. **Accord Hahalyak v. A. Frost**, **Inc.**, 664 A.2d 545, 551 (Pa.Super. 1995) (rejecting due process challenge to the denial of a continuance, noting that the right to due process does "not mandate an absolute right to be heard, only an opportunity to be heard").

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>10/26/20</u>