J-S24022-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: DANIEL T. SYLVESTER, III | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| APPEAL OF: DANIEL T. SYLVESTER, III | |
| | No. 3447 EDA 2019 |

Appeal from the Order Entered October 28, 2019
In the Court of Common Pleas of Lehigh County
Civil Division at No: 2019-C-0436

BEFORE:  BENDER, P.J.E., STABILE, and STRASSBURGER,[*] JJ.

MEMORANDUM BY STABILE, J.:　　　　　　　**FILED:  FEBRUARY 8, 2021**

Appellant, Daniel T. Sylvester, III, appeals from the order denying his petition for restoration of his right to possess a firearm.  We affirm.

The trial court recited the pertinent facts in its Pa.R.A.P. 1925(a) opinion:

> On April 1, 2013, when Appellant was 22 years old, Appellant's [great] aunt, Therese M. Gillette, signed an application for a warrant for a Section 302 emergency examination pursuant to the Mental Health Procedures Act, 50 P.S. § 7302.  Appellant was involuntarily committed to Behavioral Health Science Center at Lehigh Valley Hospital—Muhlenberg in Bethlehem, Lehigh County, Pennsylvania.  He was examined by Dr. Michael Stanley, who determined that Appellant was severely mentally disabled and admitted Appellant for a period of time not to exceed 120 hours.

---

[*] Retired Senior Judge assigned to the Superior Court.

During his commitment, further medical evaluations reflected a diagnosis of bipolar disorder, manic with psychotic features. While hospitalized, Appellant was cooperative but expressed that he would not comply upon discharge, which led to a concern by his physician that he had an increased risk of relapse. Licensed Clinical Social Worker Stacey Spadt testified that she informed Appellant of his rights under the MHPA and gave him a copy of Form MH784A. She noted on the form that she observed that Appellant understood his rights. Following a hearing on April 4, 2013, his commitment was extended for an additional 20 days pursuant to Section 303 of the Mental Health Procedures Act, 50 P.S. § 7303.

Appellant was subsequently discharged without a further commitment. Since April of 2013, there was not any evidence that Appellant had any additional adverse episodes regarding his mental health. Appellant voluntarily admitted himself into a mental health facility in 2014. However, there was not any evidence that Appellant was involuntarily committed since 2013.

In early 2019, Appellant attempted to purchase a firearm and discovered that he was legally prohibited from doing so. He initially filed a petition on February 11, 2019 seeking expungement of his Section 302 commitment. On March 11, 2019, Appellant filed an amended petition seeking expungement of both the Section 302 commitment and the subsequent extension under Section 303, or, alternatively, reinstatement of [Appellant's] right to possess a firearm under the Uniform Firearms Act.

At the hearing on September 10, 2019, [Appellant] testified and acknowledged that he had several mental health issues surrounding his bipolar disorder. He is currently seeing a therapist, licensed clinical social worker John D. Weaver. […] The court also received testimony from [Appellant's] aunt who confirmed that [Appellant] has not had any additional episodes which raised concern about his own safety or that of others. [Appellant's] paramour also testified and verified that she has not witnessed any examples of a deterioration in [Appellant's] mental health after the April 2013 commitment.

[…]

While the improvements [Appellant] has made to his life over the intervening five years are admirable, the Court must also

remain cognizant of any potential risks posed by reinstating [Appellant's] right to carry firearms. [Appellant] explained that his main reason for pursuing the instant action is to be able to utilize an industrial shotgun that weighs approximately 70 or 80 pounds at work. The gun is used to clear out choke points or clogs in a production system at the company at which he works. In order for [Appellant] to be able to get a promotion at work, he has to fill out a Bureau of Alcohol, Tobacco, and Firearms questionnaire, and his firearm prohibition stemming from his Section 302 and 303 commitments would likely prohibit him from being able to operate the shotgun. However, [Appellant] also acknowledged that his employer has not informed him that he would be ineligible for any promotion to a position which requires use of this industrial shotgun, and it is not clear the industrial shotgun qualifies as a 'firearm' under either federal or state law.[1] As a result, one could conclude the petition for reinstatement of the right to possess a 'firearm' is premature and [Appellant's] rationale that he needs his rights reinstated in order to secure a better paying job is speculative at this time.

Trial Court Opinion, 10/28/19, at 2-4, 13.

In the order on appeal, the trial court denied Appellant's petition for expungement of his commitments under §§ 302 and 303 of the Mental Health Procedures Act ("MHPA").[2] Appellant has not pursued that issue on appeal.

_____

[1] Title 18 defines a firearm as follows:

**"Firearm."** Any pistol or revolver with a barrel length less than 15 inches, any shotgun with a barrel length less than 18 inches or any rifle with a barrel length less than 16 inches, or any pistol, revolver, rifle or shotgun with an overall length of less than 26 inches. The barrel length of a firearm shall be determined by measuring from the muzzle of the barrel to the face of the closed action, bolt or cylinder, whichever is applicable.

18 Pa.C.S.A. § 6102.

[2] 50 P.S. §§ 7101-7503.

Appellant's February 11, 2019 petition also sought reinstatement of his right to possess a firearm under 18 Pa.C.S.A. § 6105(f)(1):

> Upon application to the court of common pleas under this subsection by an applicant subject to the prohibitions under subsection (c)(4), the court may grant such relief as it deems appropriate if the court determines that the applicant may possess a firearm without risk to the applicant or any other person.

18 Pa. C.S.A. § 6105(f)(1).

The trial court found that Appellant could not possess a firearm without risk to himself or others. That decision is the sole issue on appeal, and we review it for abuse of discretion:

> [T]he language in Section 6105(f)(1) plainly leaves the decision of whether to restore the right to possess a firearm within the discretion of the trial court. In that regard, we bear in mind that an abuse of discretion is not merely an error in judgment. [A]n abuse of discretion occurs when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence on record. Moreover, it is well-settled that a [ ] finder of fact is free to believe all, part or none of a witness' testimony.

*E.G.G. v. Pennsylvania State Police*, 219 A.3d 679, 683 (2019) (citations and internal quotation marks omitted).

In *E.G.G.*, the petitioner had two involuntary commitments, one in 2003 and another in 2005, based on suicidal ideations, hallucinations, a history of violence, and possible addiction to painkillers. *Id.* at 681. At the hearing in 2017, the petitioner and his wife both testified that the petitioner had stopped taking pain medication in 2005, and had not had any significant issues since. *Id.* at 681-82. Likewise, the petitioner submitted a written psychological

evaluation stating that he was not a risk to himself or others. *Id.* at 682. At a second hearing, the petitioner testified that he continued to take two antianxiety medications, and antidepressant, and a sleep aid. *Id.* at 682. The trial court denied the petition, noting its concern about the petitioner's continuing need for psychoactive medications and psychotherapy, as well as history of confrontational behavior, which on several occasions required police intervention. *Id.* at 683.

In affirming, this Court concluded that the trial court was within its discretion to deny a petition based on lingering concerns about the petitioner's mental health. This was so even though the petitioner no longer exhibited problems with misusing medications. *Id.* at 683-84. Further,

> A present clean bill of mental health is no guarantee that a relapse is not possible. Given the extreme potential harm attendant to the possession of deadly weapons by [a person with a mental illness], and the risk of relapse, we see an important government interest in controlling the availability of firearms for those who have ever been adjudicated [mentally disabled] or have ever been committed to a mental institution but are now deemed to be cured. Although appellant has been pronounced cured of his depression, we see a legitimate government interest in still limiting the availability of firearms to him.

*Id.* at 684 (quoting *In re Keyes*, 83 A.3d 1016, 1027 (Pa. Super. 2013), *appeal denied*, 101 A.3d 104 (Pa. 2014)).

Appellant argues that the trial court abused its discretion because all of the evidence produced at the September 10, 2019 hearing supported reinstatement of his right to possess a firearm. In particular, Appellant notes the passage of time between his involuntary commitment in 2013, voluntary

commitment and DUI in 2014, and his 2019 petition. Relying on the expert testimony of John D. Weaver, the licensed clinical social worker from whom Appellant receives treatment for bipolar disorder, Appellant claims he has turned his life around. Appellant now has stable employment and a loving relationship with his paramour, with whom he has a daughter and shares a home. He manages his bipolar by taking Zoloft and Buspar as prescribed, and has had no further hallucinations. We note, however, that Appellant's decision to manage his condition with medication was recent, within months of the hearing. N.T. 9/10/19, at 41, 48. From 2014 until just months before the hearing, Appellant remained un-medicated. *Id.* at 48. Weaver opined that Appellant would not pose a risk to himself or others if his right to possess a firearm were to be reinstated. Appellant also notes that he does not have a history of gun violence. He describes the evidence in favor of restoration of his rights as "overwhelming." Appellant's Brief at 28.

We find Appellant's argument unpersuasive and the similarities between this case and *E.G.G.* very instructive. In *E.G.G.*, the petitioner's involuntary commitments preceded his § 6105 hearing by more than a decade. Thus, the trial court acted within its permissible discretion in finding that the lesser period of elapsed time between Appellant's commitments and his petition in this case is not dispositive.

Further, the petitioner in *E.G.G.* had several past incidents in which he harassed store clerks to the point where police had to be summoned. The

instant record reveals that Appellant's 2013 involuntary commitment stemmed from an incident in which Appellant claimed to see people who were not there. Appellant's great aunt, with whom he lived, called police and ambulance and signed an application for his emergency examination. N.T. Hearing, 9/10/19, at 101-03 and Exhibit P1. Appellant attributed the episode to his improper mixing of mental health medications. *Id.* at 14. The next year, in 2014, Appellant voluntarily committed himself after becoming intoxicated and getting in an argument with his roommate, during which he broke a door with a baseball bat. *Id.* at 30. In connection with the 2014 incident, Appellant was convicted of driving under the influence ("DUI") and successfully completed an Alternative Rehabilitation Disposition Program. Thus, Appellant, like the petitioner in *E.G.G.*, has exhibited volatile behavior that required police intervention. While the record supports Appellant's argument that he has no history of gun violence, the incident with the baseball bat demonstrates that he committed a violent and destructive act while intoxicated.

Finally, the psychologist's report supporting restoration of the petitioner's gun rights in *E.G.G.* was not dispositive, inasmuch as the trial court had discretion to discredit the report or weigh other evidence more heavily. *E.G.G.*, 219 A.3d at 684. Similarly, in this case, the trial court had discretion to disregard or discredit Weaver's expert opinion. *See also In re E.H.*, 233 A.3d 820, 823-24 (Pa. Super. 2020) (holding that the trial court

- 7 -

acted within its discretion to disregard an expert opinion supporting restoration of the petitioner's firearms rights). Given the similarities between this case and **E.G.G.**, we discern no abuse of discretion in the trial court's decision to deny reinstatement of Appellant's firearms rights.

We also reject Appellant's argument that the trial court's reliance on several unpublished memoranda tainted its decision. In **Simpson v. Sessions**, 2017 WL 1910141 (E.D.Pa. 2017), the petitioner, who had been committed under § 302, challenged the constitutionality of 18 U.S.C.A. § 922(g)(4), which prohibits possession of a firearm under federal law by anyone "who has been adjudicated as a mental defective or who has been committed to a mental institution[.]" 18 U.S.C.A. § 922(g)(4). As the trial court noted, we may rely on federal jurisprudence for persuasive value. **Zaleppa v. Seiwell**, 9 A.3d 632, 638 n.8 (Pa. Super. 2010). In dismissing the petitioner's complaint, the Court noted that the Second Amendment right to bear arms does not protect felons and the mentally ill. **Id.** at *4 (citing **United States v. Marzzarella**, 614 A.3d 85 (3d Cir. 2010), **cert. denied**, 562 U.S. 1158 (2011)). Further, the Court concluded that the passage of time and the alleged positive changes in the petitioner's life were not grounds for removing his federal firearms ban, as federal courts have rejected the claim that passage of time and evidence of rehabilitation restore Second Amendment rights. **Id.** at *6. In essence, the analysis in **Simpson** is

consistent with this Court's analysis in *E.G.G.*  We discern no error in the trial court's decision to rely on *Simpson* as persuasive authority.

Likewise, Appellant argues the trial court erred in relying on *Commonwealth v. Current*, 2016 WL 71298 (Pa. Super. January 5, 2016), in which this Court affirmed the denial of expunction under § 6111.1(g) and the denial of restoration of firearms rights under § 6105f (f).  In *Current*, the petitioner's threats of suicide and his threats of violence toward others, while he was intoxicated, led to his involuntary commitment.  *Id.* at *3.  In affirming denial of his petition, this Court (incorporating the trial court opinion), explained that the petitioner simply tried to dispute the veracity of the allegations that led to his commitment.  *Id.* at *6.  The petitioner's evidence in his favor was "inconsistent and unconvincing."  *Id.*  Likewise, the petitioner's expert's report was "unpersuasive" and "internally inconsistent."  *Id.* at 6-7.  Further, the petitioner disregarded the discharge instructions he received at the conclusion of his treatment and failed to amend his life.  *Id.*

To distinguish this case from *Current*, Appellant notes the comparative strength of his evidence, including the positive changes he has made in his life, and the absence of any history of threats of suicide or harm to others. We acknowledge that the facts of *Current* are distinct from those before us, but weaknesses in the petitioner's evidence in that case do not translate to strengths in this one.  As we explained above, Appellant still requires therapy and medication to manage his mental health.  In fact, he began use of

recommended medications only months before the hearing. Further, he exhibited destructive behavior during one of his prior episodes. ***E.G.G.*** teaches that a trial court is within its discretion in denying reinstatement of firearms rights when these circumstances are present. Thus, while ***Current*** is distinguishable and not precedential, the trial court's reliance on it is not a basis for reversal.

Finally, we address Appellant's argument that the trial court improperly considered Appellant's motivation for seeking reinstatement of his firearm rights. Appellant bases this argument on a footnote appearing on the last page of the trial court's fourteen-page opinion, in which the court wrote:

> With respect to [Appellant's] employment and the industrial shotgun about which the court received testimony, as discussed above, there is not sufficient evidence at this time from which the court can determine that the firearm disability either prohibits [Appellant] from utilizing the industrial shotgun or limits any opportunity for career advancement. The court would be willing to entertain a limited exemption on the firearm disability for a work-related basis in the context of a reconsideration motion if there is any evidence to demonstrate that such an exemption would be necessary.

Trial Court Opinion, 10/28/19, at 14 n.1.

Appellant argues the outcome would have been different if he presented the court with additional evidence of his need to operate a gun in order to further his career. Appellant's Brief at 22. In examining his motive for owning a firearm, Appellant argues, the trial court ignored the substantive question under § 6105(f).

The record belies Appellant's contention. The trial court gave separate consideration to his fitness for reinstatement under § 6105(f)(1) and his potential need for a workplace exemption for the industrial firearm.[3] In its opinion, the trial court noted Appellant's ongoing need for medication[4] and treatment of his bipolar disorder, the troubling circumstances leading to his 2013 involuntary commitment, and the intoxicated, violent outburst that led to his 2014 voluntary commitment. Trial Court Opinion, 10/28/19, at 13-14. Pursuant to **E.G.G.**, the trial court acted within its permissible discretion in finding that Appellant failed to establish that he could possess a firearm without risk to himself or others. Thus, the court conducted the proper inquiry under § 6105(f)(1). The trial court's opinion treated Appellant's need to operate an industrial shotgun at his workplace as a separate issue for which it lacked sufficient evidence to proceed.[5]

---

[3] We express no opinion on the exemption the trial court discussed.

[4] The record does not support the trial court's statement that Appellant had yet to begin taking the prescribed medications. For the reasons explained in the main text, however, this error does not affect our result.

[5] Furthermore, we observe that Appellant's argument is somewhat disingenuous. At the hearing, Appellant testified that his coworkers spawned his interest in owning a gun: "[E]verybody I work with is diehard guns, so it's like yeah, I guess I'll go check them out. And then they ran the thing, and it came up no, I can't." N.T. 9/10/19, at 66. When asked directly why he would like his rights restored, Appellant said it was because of the ATF questionnaire he had to fill out in connection with the industrial shotgun. **Id.** at 39-40. Appellant was therefore worried that his commitments under §§ 302 and 303 would hinder his ability to advance within his company. **Id.** at 60-63, 67.

For all of the foregoing reasons, we affirm the trial court's order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/8/21

---

Moreover, Appellant expressly disavowed any interest in owning a personal firearm: "I have no real interest to actually owning a firearm. I'm pretty left. I'm a Bernie supporter, so I'm pro-gun control." *Id.* at 43. Thus, in footnote one of its opinion, the trial court offered to attempt to accommodate Appellant to the extent necessary to permit him to operate the industrial shotgun at work, in accordance with Appellant's express wishes. Nothing in the record or the trial court's opinion supports Appellant's argument that the court would have granted full restoration under § 6105(f)(1) if only Appellant had submitted more evidence on the industrial shotgun and Appellant's use of it.