J-A21013-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| PATRICK L. HENNESSY, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| SHAWN ROBERTSON, JR., SHAWN ROBERTSON, BRUCE REIKOW, RYAN CARUSO, FRANK D. CARUSO, AND ROSETTA L. CARUSO, H/W, | |
| APPEAL OF: RYAN CARUSO, | |
| Appellant | No. 3353 EDA 2013 |

Appeal from the Judgment Entered November 21, 2013
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): 4451 January Term, 2011

BEFORE:  BOWES, OTT, and STRASSBURGER,[*] JJ.

MEMORANDUM BY BOWES, J.:　　　　　　　　**FILED OCTOBER 24, 2014**

This negligence action arose from successive automobile accidents that occurred minutes apart in the early morning hours of July 26, 2009.  The jury returned a $19 million-dollar verdict in favor of Patrick L. Hennessy and against both Ryan Caruso and Shawn Robertson, Jr., finding them jointly and severally liable for the above-the-knee amputation of Mr. Hennessy's right leg and other injuries.  Mr. Caruso appeals and alleges that the trial court erred in failing to apportion damages.  He contends further that the

_____

[*]  Retired Senior Judge assigned to the Superior Court.

court's personal belief that the defendants were joint tortfeasors led to erroneous evidentiary rulings, improper jury instructions, and a grossly excessive verdict, which should have been remitted. After careful review, we affirm.

At approximately 2:00 a.m. on the aforementioned date, Mr. Caruso was driving his vehicle northbound on Roosevelt Boulevard in the City of Philadelphia. Mr. Hennessy was seated in the front passenger seat. Mr. Caruso rear-ended a vehicle driven by Bruce Reikow, which was stopped at a red light, and both vehicles were disabled due to the collision. As Mr. Hennessy and a passenger in the Reikow vehicle began to push the Caruso vehicle to the shoulder of the road, a vehicle driven by Shawn Robertson, Jr., also traveling northbound, struck the rear of Mr. Reikow's vehicle and careened into the left rear corner of Mr. Caruso's vehicle, crushing Mr. Hennessy's right leg. After several weeks of medical treatment, Mr. Hennessy underwent an above-the-knee amputation of that leg.[1]

Mr. Hennessy commenced this negligence action against Shawn Robertson, Jr., Ryan Caruso, the owners of their vehicles, and Bruce Reikow. He later voluntarily terminated the action against the vehicle owners, and the trial court entered a non-suit in favor of Mr. Reikow. The jury returned a

---

[1] Mr. Hennessy filed a separate medical malpractice action against physicians who treated him for injuries sustained in the motor vehicle accidents, which was consolidated with this action. The medical malpractice claims settled prior to trial.

$19,145,904.17 verdict in favor of Mr. Hennessy and against Ryan Caruso and Shawn Robertson, Jr., and attributed 45% of causal negligence to Mr. Caruso and 55% to Mr. Robertson.[2]

Mr. Caruso filed a motion for post-trial relief seeking either judgment notwithstanding the verdict ("n.o.v."), a new trial, or a remittitur. The trial court denied the motion, molded the verdict to include delay damages, and entered judgment on the verdict on November 21, 2013. Mr. Caruso timely appealed and the trial court issued an opinion in support of its denial of post-trial relief.

Ryan Caruso presents ten issues on appeal:

1. Whether the Trial Court erred or abused its discretion in failing to determine that damages were capable of apportionment as between Defendant Ryan Caruso ("Caruso") and Defendant Shawn Robertson, Jr. ("Robertson") so that the jury could apportion damages between separate tortfeasors, and whether Caruso is entitled to a new trial based on the resulting prejudice?

2. Whether the Trial Court committed reversible error in "allow[ing] the status of the two Defendants [Caruso and Robertson] to be determined by the Jury," and whether Caruso is entitled to a new trial based on the resulting prejudice?

---

[2] The amendments to the Pennsylvania Comparative Negligence Act, 42 Pa.C.S. § 7102, which effectively eliminated joint and several liability, were not in effect when this action was commenced. The court instructed the jury that, if it determined that Mr. Caruso and Mr. Robertson were both factual causes of Mr. Hennessy's injuries, it should allocate the percentages of responsibility between the two tortfeasors. This allocation was only for purposes of quantifying the defendants' respective contribution interests.

3. Whether the Trial Court erred or abused its discretion in allowing its personal belief that Caruso and Robertson were joint tortfeasors to skew key evidentiary rulings, its improvised jury instruction on causation and the jury verdict slip against Caruso, and whether Caruso is entitled to a new trial based on the resulting prejudice?

4. Whether the Trial Court erred or abused its discretion in permitting an accident reconstruction expert to testify on behalf of Plaintiff Patrick L. Hennessy ("Plaintiff"), and to opine on the ultimate issue of causation, and whether Caruso is entitled to a new trial based on the resulting prejudice?

5. Whether the Trial Court erred or abused its discretion in excluding lay testimony regarding the speed of Robertson's vehicle at the time of the second accident that injured Plaintiff, and in allowing testimony from Plaintiff's expert that rebutted the excluded testimony, thereby impeding Caruso's defense that Robertson was an intervening superseding cause of Plaintiff's injury, and whether Caruso is entitled to a new trial based on the resulting prejudice?

6. Whether the Trial Court erred or abused its discretion in failing to give Pennsylvania Standard Civil Jury Instruction 7.80, and in giving an improvised jury instruction on causation, and whether Caruso is entitled to a new trial based on the resulting prejudice?

7. Whether the Trial Court erred or abused its discretion in failing to use the jury verdict slip proffered by Caruso, and in using an improvised jury verdict slip, and whether Caruso is entitled to a new trial based on the resulting prejudice?

8. Whether Caruso is entitled to judgment notwithstanding the verdict or a new trial on the ground that liability was not supported by the evidence and was against the clear weight of the evidence?

9. Whether Caruso is entitled to a new trial on both liability and damages?

10. Whether Caruso is entitled to remittitur due to the excessiveness of the verdict?

Appellant's brief at 4-6.

The majority of Mr. Caruso's claims implicate the trial court's denial of his motion for a new trial. The following principles govern our review of such claims:

> Consideration of all new trial claims is grounded firmly in the harmless error doctrine "[which] underlies every decision to grant or deny a new trial. A new trial is not warranted merely because some irregularity occurred during the trial or another trial judge would have ruled differently; the moving party must demonstrate to the trial court that he or she has suffered prejudice from the mistake." *Harman ex rel. Harman v. Borah*, 562 Pa. 455, 756 A.2d 1116, 1122 (2000). Once the trial court passes on the moving party's claim, the scope and standard of appellate review coalesce in relation to the reasons the trial court stated for the action it took. *See id*. Where the court is presented with a finite set of reasons supporting or opposing its disposition and the court limits its ruling by reference to those same reasons, our scope of review is similarly limited. *See id*. at 1123. Thus, "where the trial court articulates a single mistake (or a finite set of mistakes), the appellate court's review is limited in scope to the stated reason, and the appellate court must review that reason under the appropriate standard." *Id*. (quoting *Morrison v. Com., Dept. of Pub. Welfare*, 538 Pa. 122, 646 A.2d 565, 571 (1994)).
>
> Our standard of review prescribes the degree of scrutiny we apply to the trial court's decision and the manner in which we evaluate its conclusions. *See id*. at 1122 (citing *Morrison*, 646 A.2d at 570). If the trial court's challenged ruling was one of law, we review its grant or denial of a new trial on that point to discern if the court committed legal error. *See id*. at 1123. Similarly, if the challenged ruling involved a discretionary act, we review the disposition of the new trial motion relative to that act for abuse of discretion. *See id*. "Discretion must be exercised on the foundation of reason." *Id*.

*Egan v. USI Mid-Atlantic, Inc.*, 92 A.3d 1, 11 (Pa.Super. 2014) (quoting

*Rettger v. UPMC Shadyside*, 991 A.2d 915, 923-24 (Pa.Super. 2010)).

Mr. Caruso's first and second issues are interrelated. He alleges first that the trial court was obligated to rule on whether the damages were capable of apportionment, and that its failure to do so was error. Second, he contends that the court should have applied the factors delineated in *Neal v. Bavarian Motors, Inc.*, 882 A.2d 1022 (Pa.Super. 2005), and found that apportionment was proper. Mr. Caruso points to undisputed evidence that Mr. Hennessy was not injured in the first collision; the only injury to Mr. Hennessy's leg occurred during the second collision when Mr. Robertson's vehicle struck him as he was pushing the Caruso vehicle to the berm. He contends that since the injuries from the first and second collisions were divisible, the trial court should have apportioned the damages. He further maintains that since the damages were capable of apportionment, he and Mr. Robertson were separate tortfeasors, not joint tortfeasors, and that he should not be subject to liability for the entire verdict.[3]

---

[3] As this Court explained in *Glomb v. Glomb*, 530 A.2d 1362, 1365 (Pa.Super. 1987), "[i]mposition of joint and several liability enables the injured party to satisfy an entire judgment against any one tort-feasor, even if the wrongdoing of that tort-feasor contributed only a small part to the harm inflicted. Apportionment of liability, on the other hand, limits the liability of each tort-feasor to that portion of the harm which he or she caused. Thus, if the court imposes joint and several liability, and if only one of the joint tort-feasors is financially responsible, the injured party can attempt to recover the full measure of damages against that single source." The law has changed. *See* footnote 2, *supra*.

This Court has held that "[w]hether liability for harm to a plaintiff is capable of apportionment is a question of law for the court, not a question of fact for the jury." **Smith v. Pulcinella**, 656 A.2d 494, 496-497 (Pa.Super. 1995) quoting **Harka v. Nabati**, 487 A.2d 432, 434 (Pa.Super. 1985) and **Voyles v. Corwin**, 441 A.2d 381 (Pa.Super. 1982). In making that determination, "courts consider several factors: the identity of a cause of action against each of two or more defendants; the existence of a common or like duty; whether the same evidence will support an action against each; the single, indivisible nature of the injury to the plaintiffs; identity of the facts as to time, place or result; whether the injury is direct and immediate, rather than consequential; responsibility of the defendants for the same injuria as distinguished from the same damnum." **Neal**, **supra** at 1027 (quoting **Voyles**, **supra** and citing Prosser, Law of Torts, § 46 n. 2 (4th ed. 1971)). "A court can direct the apportionment of liability among distinct causes only when the injured party suffers distinct harms or when the court is able to identify 'a reasonable basis for determining the contribution of each cause to a single harm.'" Restatement (Second) of Torts § 433A(1) (1965). **Glomb v. Glomb**, 530 A.2d 1362, 1365 (Pa.Super. 1987).

Preliminarily, we find no support for Mr. Caruso's claim that the trial court abdicated its responsibility to rule on whether the damages were capable of apportionment. At the charging conference, counsel for Mr. Caruso asked the trial court to hold, as a matter of law, that the injuries

from the first and second impacts were severable and capable of apportionment. In support of his position, counsel stated that Mr. Caruso's negligence played no role in Mr. Hennessy's presence on the scene where Mr. Robertson struck him. N.T., 5/21/13, at 112. When the trial court challenged the accuracy of that statement, counsel clarified that what he meant was that Mr. Hennessy "was not injured in the first accident." *Id*. at 113. He stated that the damages were severable because the first accident did not cause the injury. *Id*. at 14. The trial court disagreed, stating that it believed "the two drivers were joint tortfeasors[,]" *id*. at 121, and questioned how defense counsel could dispute "that but for, without your client's negligence[,]" Mr. Hennessy would have sustained the amputation injury. *Id*. at 140. The court subsequently rejected Mr. Caruso's proposed point for charge and verdict slip that would direct the jury to apportion the damages. The trial court recognized that until the jury resolved the factual causation issue, Mr. Caruso's premise that there were two accidents resulting in two distinct harms capable of apportionment was at issue.

Next, Mr. Caruso alleges that the trial court erred in denying apportionment. He recites the **Neal** factors, which we identified in **Voyles**, *supra*, and avers that their application would have favored apportionment on the facts herein. He argues that the injuries "were readily divisible on a logical, reasonable and practical basis because there were two separate accidents separated not only by time and different actors, but also by their

respective impacts on [Mr. Hennessy]." Appellant's brief at 20. He directs this Court's attention to **Embrey v. Borough of West Mifflin**, 390 A.2d 765 (Pa.Super. 1978), **Harka**, **supra**, **Smialek v. Chrysler Motors Corp**., 434 A.2d 1253 (Pa.Super. 1981), and **Lasprogata v. Qualls**, 397 A.2d 803 (Pa.Super. 1979), where the harm was apportioned between the original tortfeasors who caused injuries and the hospitals who negligently treated the victims resulting in additional injuries.[4]

While Mr. Caruso suggests that application of the **Neal** factors favors apportionment, we reach a contrary conclusion. In the instant case, the negligent conduct of the two drivers was similar, identical duties were violated, and the same evidence supported actions against both. The negligent acts of Mr. Caruso and Mr. Robertson occurred in close temporal proximity and in the same precise location. Although the collisions were five minutes apart, the Robertson accident involved the vehicles disabled in the Caruso collision that remained on the roadway. The injury was immediate and one could reasonably find both actors responsible for that injury. But for Mr. Caruso's negligence, Mr. Hennessy would not have been pushing the disabled vehicle to the shoulder in a location where he was vulnerable to injury from oncoming motorists like Mr. Robertson.

---

[4] We note that, prior to trial, Mr. Caruso filed a motion *in limine* requesting that the trial court rule, as a matter of law, that he was not a joint tortfeasor with any of the other defendants, including the medical providers as well as Mr. Robertson.

Mr. Caruso persists in arguing that there were two separate accidents, and, since Mr. Hennessy sustained no injury in the first accident and the devastating leg injury occurred in the second accident, the injuries were clearly divisible and apportionment was indicated. The fatal flaw in Mr. Caruso's position is that it is predicated on the incorrect assumption that Mr. Caruso could not be liable for any consequences of his negligence beyond the first collision. **See Glomb**, **supra** at 1367 (citing the Restatement (Second) of Torts § 433A comment i for the proposition that, "a court cannot direct apportionment between a party whose misconduct facilitates the infliction of a harm and a party who actually inflicts that harm."). Mr. Caruso ignores the fact that the jury concluded that his negligence was a factual cause of Mr. Hennessy's leg injury. He does not argue that the leg injury was capable of apportionment.

The cases relied upon by Mr. Caruso in support of apportionment are inapposite as they involve tortfeasors who initially caused the injury and the medical providers whose subsequent negligent treatment enhanced or caused additional injuries. **See e.g. Embrey**, **Harka**, **Smialek**, and **Lasprogata**, **supra**. We recognized in those cases that the defendants were negligent in different ways and violated different duties. We held in **Lasprogata** that the "tortfeasor originally causing an injury and a physician who subsequently aggravates or causes a new injury are not joint tortfeasors[,]" finding their acts "severable as to time, neither having the

- 10 -

opportunity to guard against the other's acts, and each breaching a different duty owed to the injured plaintiff." **Lasprogata**, **supra** at 805.

The situation here is similar to the one in **Smith v. Pulcinella**, **supra**, which also involved successive motor vehicle accidents and where we held that apportionment was improper. Smith's car was rear-ended by a car driven by Pulcinella. A police officer drove Smith's car to the left shoulder and placed Pulcinella's car behind it. The parties exchanged information and re-entered their cars approximately fifteen minutes later. A third car struck Pulcinella's car in the rear and forced it into Smith's car for the second time.

Smith attempted to sue the driver of the second car as well as Pucinella, but apparently misidentified the driver, and the suit proceeded solely against Pulcinella. At trial, Smith's treating physician testified that Smith's injury, a herniated disc in her lower back, was a result of the accidents. However, when the physician could not differentiate between injuries suffered in the first impact and the second impact, Pulcinella moved for a non-suit and then a directed verdict. Pulcinella argued that since Smith had not specifically alleged that he was negligent in the second accident, he was not liable for any injuries resulting from that accident. The trial court denied the motions because it determined, as matter of law, that the two impacts could be considered by the jury as a single accident. It directed the jury not to apportion damages, but rather, to determine whether Pulcinella was negligent and whether his negligence was a substantial factor in

contributing to Smith's injuries. In concluding that Pulcinella was negligent and that his negligence was a substantial factor in causing Smith's back injury, the jury held Pulcinella jointly and severally liable for Smith's injuries.

On appeal, Pulcinella alleged that the trial court erred in refusing to apportion damages between the two accidents. We held that the facts supported the trial court's determination that Smith's injuries were not capable of apportionment as between Pulcinella and the driver of the second vehicle. Both drivers owed Smith the same duty of care, were negligent in the identical fashion, the accidents were close in time and place, and the harm as a result of the combined negligence was indivisible. We concluded that, "but for Pulcinella's negligence, Smith would not have been along the shoulder of the road in a location where she was susceptible to being struck a second time." *Smith*, *supra* at 498. We relied upon *Lasprogata* and distinguished the very same cases Mr. Caruso relies upon here.

Here, as in *Smith*, Mr. Caruso sought to limit his potential liability for damages as a result of injuries sustained in the first collision. The trial court correctly recognized that Mr. Caruso was subject to liability for damages for the leg injury suffered in the Robertson collision if the jury determined that his negligence was a factual cause of that injury. Resolution of the causation issue would determine the extent of Mr. Caruso's liability and whether he was a separate tortfeasor.

Finally, in support of apportionment, Mr. Caruso argues that it can be inferred from eyewitness testimony that it was not foreseeable that Mr. Robertson would "come barreling down the highway at a high rate of speed without at least trying to stop" where he had an unobstructed view and the vehicles had on their emergency flashers. Appellant's brief at 27. He relies upon **Shamey v. State Farm Mut. Auto. Ins. Co.**, 331 A.2d 498 (Pa.Super. 1974), for the proposition that where the second accident was unforeseeable, damages are capable of apportionment, and he and Mr. Robertson were not joint tortfeasors.[5]

Mr. Caruso's argument is one of superseding and intervening causation. He claims that the conduct of Mr. Robertson was so extraordinary and unanticipated that it relieves Mr. Caruso of liability for injuries sustained in the second collision. The jury, however, rejected that position in concluding that Mr. Caruso was a factual cause of the injury.

_____

[5] The underlying facts in **Shamey v. State Farm Mut. Auto. Ins. Co.**, 331 A.2d 498 (Pa.Super. 1974), involved successive motor vehicle accidents. The issue before us was whether the trial court properly entered summary judgment in favor of the uninsured motorist carrier based on the interpretation of a provision in a release requiring the insured to seek the insurer's consent prior to settling any claims with anyone legally liable. We reversed the grant of summary judgment, finding "the interpretation suggested by the Shameys to be at least equally reasonable as that proffered by State Farm." **Id**. at 502. We also noted the potential for genuine issues of fact if the evidence adduced at trial indicated that the first tortfeasor's negligence put the Shameys in a position of peril, thus subjecting him to liability. We fail to see how this legal authority supports Mr. Caruso's position herein.

Mr. Caruso's negligent conduct was "an actual, real factor in causing the harm." *See* Pa.SSJI (Civ.) 13.20. Furthermore, in proffering this argument, Mr. Caruso unwittingly conceded that causation was determinative of whether apportionment was possible, thus undermining his criticism that the trial court improperly conflated causation and apportionment. *See* Appellant's brief at 21. We find no error in the trial court's rejection of apportionment on the facts.

Mr. Caruso's third, fourth, fifth, and sixth issues have a common theme. He contends that a new trial is warranted as the trial court failed to remain impartial, and that it permitted its personal belief that Mr. Caruso and Mr. Robertson were joint tortfeasors to color its evidentiary rulings, the jury charge, and the verdict slip. In support of his position, he points to the trial court's statements at the charging conference that it believed the defendants were joint tortfeasors. Additionally, Mr. Caruso contends that, by instructing the jury how to allocate negligence in the event it would find that Mr. Caruso and Mr. Robertson were both factual causes of Mr. Hennessy's injury, the trial court permitted its personal beliefs to influence the jury. Mr. Hennessy counters that the court's expressions of personal belief were uttered outside the presence of the jury. Furthermore, he maintains there was no prejudice since apportionment would have been improper regardless. *Glomb*, *supra* at 1367 n.4.

After a thorough review of the record, we find no support for Mr. Caruso's general premise that the trial court was biased in the manner in which it ruled on the admissibility of evidence or conducted the trial, or that it permitted its personal beliefs to improperly influence the jury. We will examine Mr. Caruso's claims *seriatim*.

Prior to trial, the court denied Mr. Caruso's motion *in limine* seeking to preclude Mr. Hennessy from introducing the expert testimony of accident reconstruction expert, Steven M. Schorr. Mr. Caruso contends that this ruling constituted error or an abuse of discretion and was severely prejudicial. He alleges that the jury was capable of understanding the facts, which were not in dispute, and drawing its own conclusions about the responsibility of the various parties; thus, expert testimony was unnecessary. He maintains that the court abused its discretion in permitting Mr. Schorr to opine, over objection, that the conduct of both Mr. Caruso and Mr. Robertson were substantial contributing factors in the collision that resulted in the injury, even though he concedes that an expert is permitted to render an opinion on the ultimate issue.

Mr. Hennessy points out that he bore the burden of proving negligence generally, and, causation specifically, and expert testimony was admissible for that purpose. He argues that the expert's reconstruction of the accident assisted the jury in understanding the sequence of the collisions, which arguably had a bearing on causation. Furthermore, the expert testimony

was not objectionable simply because it embraced the ultimate issue. **See** Pa.R.E. 704.

We note that, "[a]dmissibility of expert testimony is left to the sound discretion of the trial court, and as such, this Court will not reverse the trial court's decision absent an abuse of discretion." **Snizavich v. Rohm & Haas Co.**, 83 A.3d 191, 194 (Pa.Super. 2013); **see also Grady v. Frito-Lay, Inc.**, 839 A.2d 1038, 1046 (Pa. 2003). "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." **Id**.

> Rule 702 of the Pennsylvania Rules of Evidence provides:
>
> If scientific, technical or other specialized knowledge beyond that possessed by a layperson will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise.

Moreover, Pennsylvania law permits expert opinion testimony on the ultimate issue. **McManamon v. Washko**, 906 A.2d 1259, 1278 (Pa.Super. 2006); Pa.R.E. 704.[6] The trial judge has discretion to admit or exclude

---

[6] Pa.R.E. 704.- Opinion on ultimate issue

*(Footnote Continued Next Page)*

expert opinions on the ultimate issue depending on the helpfulness of the testimony versus its potential to cause confusion or prejudice. In **McManamon**, this Court found nothing improper in permitting a defense expert on accident reconstruction to testify as to the cause of the accident.

We find no abuse of discretion in the admission of Mr. Schorr's expert reconstruction testimony. The testimony assisted the jury in understanding the sequence of the accidents and the mechanism of injury. Furthermore, the expert's opinion regarding the ultimate issue of causation was permissible. Mr. Hennessy bore the burden of proving negligence, specifically that the negligence of both Mr. Caruso as well as Mr. Robertson was the factual cause of his above-the-knee amputation. Since causation was disputed, the testimony was probative.

Mr. Caruso next contends that the trial court abused its discretion in sustaining an objection to Mr. Reikow's testimony that the Robertson car was traveling at a speed of fifty to sixty miles per hour. He argues that the ruling illustrates the trial court's bias, and further that it prejudiced him because it "impeded his attempt to establish that . . . Robertson's conduct was an intervening superseding cause" of Mr. Hennessy's injuries. Appellant's brief at 42.

_(Footnote Continued)_ ⸻

Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.

- 17 -

In order for a layperson to render an opinion as to the speed of a vehicle, the witness must have experience with moving vehicles and an adequate opportunity to observe. *See Fisher v. Central Cab Co*., 945 A.2d 215 (Pa.Super. 2008). It was the latter requirement that the trial court found wanting. Mr. Reikow testified that he was standing in the doorway to his car when the Robertson vehicle collided with his car. The trial court found no foundational testimony establishing that Mr. Reikow was standing at a vantage point to view and estimate the speed of the Robertson vehicle. We find no abuse of discretion. In addition, we find that since Mr. Reikow opined that the Robertson vehicle was traveling at a high rate of speed, any alleged error is harmless.

Mr. Caruso also contends that by permitting Mr. Schorr to testify that Mr. Robertson was not going fifty to sixty miles per hour, after instructing the jury to disregard Mr. Reikow's estimate of the speed of that vehicle, the trial court implied that the expert was more credible than the lay witnesses. Mr. Caruso misrepresents the record. The trial court did not permit the expert to testify as to speed; defense counsel elicited Mr. Schorr's opinion as to the speed of the Robertson vehicle on cross-examination. Counsel asked the expert to agree that the Robertson vehicle was traveling at a high rate of speed. Mr. Schorr declined to opine as to the exact speed of the Robertson vehicle, but he maintained that since the vehicle only moved fifteen to twenty feet after impact, "there is no way they were going 60 to 70 miles an

hour – 50 or 60 miles an hour." N.T., 5/20/12, at 143. Since there was no objection or motion to strike this testimony, the court did not rule on its propriety, and any alleged error in its admission is waived. Obviously, since the court did not rule on the admissibility of this evidence, any allegation of partiality wholly lacks merit.[7]

Next, Mr. Caruso alleges that the jury charge and the verdict slip were skewed against him and reflected the trial court's bias. Mr. Caruso proposed that the jury be instructed in accordance with Pa.SSJI (Civ.) 7.80, which describes the apportionment of damages where two or more defendants cause distinct damages.[8] He also requested a charge on concurring causes where it is uncertain whose negligent conduct caused the harm in conformity

_____

[7] The trial court also instructed the jury that it did not have to accept an expert's opinion merely because he was an expert. N.T., 5/22/13, at 106.

[8] Pa.SSJI (Civ.) 7.80 * APPORTIONMENT OF DAMAGES (TWO OR MORE DEFENDANTS)--DISTINCT DAMAGES

> The plaintiff claims that each of the defendants' negligence has contributed to [his] [her] damages. As I have told you, in order to recover in this case against one or more of the defendants, you must find that the conduct of the defendant whom you have found negligent was a factual cause in bringing about the plaintiff's damages. If you find that a defendant caused distinct damages from those of another defendant, you must decide what percentage of the plaintiff's damages was caused by that defendant's negligence. The verdict slip will have a space in which you can write in the percentage figures.

with Pa.SSJI (Civ.) 13.160.[9] **See** Defendant Caruso's Revised Points for Charge, 5/21/13, at unnumbered 3. The trial court refused the apportionment charge and agreed with Mr. Hennessy's counsel that the second proposed charge was improper on the facts of this case. The trial court instructed the jury on factual cause in accordance with Pa.SSJI (Civ.) 13.20.[10] Then, it informed the jury:

_____

[9] Pa.SSJI (Civ.) 13.160 * CONCURRING CAUSES--ISOLATION OF SOLE CAUSE AMONG MULTIPLE ACTORS

> Sometimes two or more people are negligent, but only one person's negligent conduct factually caused the plaintiff's [harm] [injury] [damage] and it is uncertain which person caused the [harm] [injury] [damage].

> Under such circumstances each negligent [person] [defendant] has the burden of proving that he or she did not factually cause the plaintiff's [harm] [injury] [damage].

[10] Pa.SSJI (Civ.) 13.20 – FACTUAL CAUSE

> In order for [name of plaintiff] to recover in this case, [name of defendant]'s [negligent] [grossly negligent] [reckless] conduct must have been a factual cause in bringing about harm. Conduct is a factual cause of harm when the harm would not have occurred absent the conduct. To be a factual cause, the conduct must have been an actual, real factor in causing the harm, even if the result is unusual or unexpected. A factual cause cannot be an imaginary or fanciful factor having no connection or only an insignificant connection with the harm.

> To be a factual cause, [name of defendant]'s conduct need not be the only factual cause. The fact that some other causes concur with [name of defendant]'s negligence in producing an injury does not relieve [name of defendant] from liability as long as [his] [her] own negligence is a factual cause of the injury.

Members of the jury, the defendant Ryan Caruso contends in this matter that although he is negligent for rear-ending the vehicle operated by Bruce Reikow, he is not liable for the injuries suffered by the plaintiff Patrick L. Hennessy because he did not cause the specific harm suffered by Mr. Hennessy. That is Mr. Hennessy's contention.

Mr. Caruso argues that Mr. Hennessy's leg amputation was caused by factors set in motion by the negligence of defendant Shawn Robertson when he rear-ended Mr. Reikow's vehicle in a separate collision sometime after the initial collision.

For purposes of this case, however, jurors, you are allowed, although not required, to consider the events that unfolded on the night of July 26, 2009 to constitute one single accident.

The law in Pennsylvania is that if two or more causes combine to produce a single harm[,] which is incapable of being divided on any logical reasonable or practicable basis and each cause is a factual cause in bringing about harm an arbitrary apportionment should not be made.

N.T., 5/22/13, at 104-05.

Mr. Caruso objects to the court's use of the terms "argues" and "contends" in describing his position. Furthermore, he claims that the latter instruction had the effect of steering the jury away from finding two separate accidents.

Our standard of review when considering the adequacy of jury instructions in a civil case is to "determine whether the trial court committed a clear abuse of discretion or error of law controlling the outcome of the case." *Stewart v. Motts*, 539 Pa. 596, 654 A.2d 535 (1995). It is only when "the charge as a whole is inadequate or not clear or has a tendency to mislead or confuse rather than clarify a material issue" that error in a charge will be found to be a sufficient basis for the award of a new trial. *Id*. at 540; *Ferrer v. Trustees of University of Pennsylvania*, 573 Pa. 310, 345, 825 A.2d 591, 612 (2002);

> *see also Tindall v. Friedman*, 2009 PA Super 50, 970 A.2d 1159, 1175 (Pa. Super. 2009).

*Pringle v. Rapaport*, 980 A.2d 159, 165 (Pa.Super. 2009). A trial judge has "wide latitude instructing a jury," *Hatwood v. Hospital of the University of Pennsylvania*, 55 A.3d 1229 (Pa.Super. 2012), and "may use any particular language, as long as the words sufficiently and fully convey the rules of law applicable to the case." *Bailey v. Pennsylvania Elec. Co.*, 598 A.2d 41, 49 (Pa.Super. 1991).

We find no reversible error in the court's charge to the jury. The instructions adequately apprised the jury of the relevant law on causation. The fact that the trial court spoke in terms of Mr. Caruso's "contentions" and "arguments" was not prejudicial. Many of the suggested standard jury instructions use identical language, including Pa.SSJI (Civ.) 7.80, the charge requested by Mr. Caruso. *See also e.g.* Pa.SSJI (Civ.) 13.00. The court's instruction that the jury could view the events as one rather than two accidents merely permitted the jury to find that two causes combined to produce one harm.

Mr. Caruso also complains that there were errors in the verdict slip. Specifically, he points to the use of the plural possessive "defendants'" in Question 2, and avers that it impermissibly suggested to the jury that it should find both defendants to be factual causes. N.T., 5/22/13, at 3. He also contends that a new trial is necessary because the verdict slip had no place to designate which of the defendants were negligent.

The trial court tendered its proposed verdict slip to counsel for both parties and invited their comments. Mr. Caruso raised no objection to what was likely a typographical error in the word "defendants'" in Question 2. Nor did he object to the absence of a place to indicate that Mr. Caruso was not negligent. In fact, counsel stated on the record that he had no objection to the final verdict slip. N.T., 5/22/12, at 3. Since Mr. Caruso did not object to the verdict slip on the grounds raised herein, we agree with Mr. Hennessy that these objections are waived. *See* Pa.R.C.P. 227.1(b)(1) and (2) (issues are waived for purposes of post-trial relief unless the issue was specifically raised during pre-trial or trial proceedings).

Even if we did not find the claims waived, they offer no basis for relief. Since Mr. Caruso admitted he was negligent, that issue was not before the jury. Question 1 on the verdict slip asked, "Do you find that any of the defendants were negligent?" Prior to submitting the verdict slip to the jury, the trial court placed "Xs" on the separate lines indicating "Yes" for Mr. Caruso and "Yes" for Mr. Robertson. Question 2 directed the jury to determine for each defendant whether "the defendants' negligence" was a factual cause in bringing about Mr. Hennessy's injuries. While use of the singular possessive "defendant's" may have been preferable to the plural possessive, we find any error in this regard to be harmless. The jury was still required to make a specific determination as to whether Mr. Caruso's "negligence was a factual cause in bringing about Patrick Hennessy's

injuries." Verdict Slip, Question 2. The jury responded affirmatively to the question.

Next, Mr. Caruso claims that the trial court erred in refusing to grant judgment n.o.v. where the jury's verdict was contrary to law regarding separate tortfeasors and the verdict was contrary to facts that "indisputably showed" that Mr. Hennessy sustained his injuries in the Robertson accident "which occurred five minutes later as a result of Robertson's extraordinary and unforeseeable conduct." Appellant's brief at 50.

In reviewing such a motion,

"the evidence must be considered in the light most favorable to the verdict winner, and he must be given the benefit of every reasonable inference of fact arising therefrom, and any conflict in the evidence must be resolved in his favor." *Broxie v. Household Finance Company*, 472 Pa. 373, 380, 372 A.2d 741, 745 (1977). *See also*, *Metts v. Griglak*, 438 Pa. 392, 264 A.2d 684 (1970) and *Gonzalez v. United States Steel Corp.*, 484 Pa. 277, 398 A.2d 1378 (1979). Moreover, a judgment n.o.v. should only be entered in a clear case and any doubts must be resolved in favor of the verdict winner. *See Atkins v. Urban Redevelopment Authority of Pittsburgh*, 489 Pa. 344, 414 A.2d 100 (1980) and *Steward v. Chernicky*, 439 Pa. 43, 266 A.2d 259 (1970). Further, "a judge's appraisement of evidence is not to be based on how he would have voted had he been a member of the jury, but on the facts as they come through the sieve of the jury's deliberations." *Brown v. Shirks Motor Express*, 393 Pa. 367, 375, 143 A.2d 374, 379 (1958).

There are two bases upon which a judgment n.o.v. can be entered: one, the movant is entitled to judgment as a matter of law, *Tremaine v. H.K. Mulford Co.*, 317 Pa. 97, 176 A. 212 (1935), and/or two, the evidence was such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant, *Cummings v. Nazareth Borough*, 427 Pa. 14, 233 A.2d 874 (1967). With the first a

court reviews the record and concludes that even with all factual inferences decided adverse to the movant the law nonetheless requires a verdict in his favor, whereas with the second the court reviews the evidentiary record and concludes that the evidence was such that a verdict for the movant was beyond peradventure.

***Moure v. Raeuchle***, 604 A.2d 1003, 1007 (Pa. 1992).

This issue is nothing more than a rehashing of Mr. Caruso's contention that the imposition of joint and several liability was contrary to law. Despite the fact that Mr. Hennessy was not injured in the Caruso accident, the jury was permitted to find that Mr. Caruso's negligence was a factual cause of Mr. Hennessy's leg injury. That the second impact occurred five minutes later did not sever the negligence of Mr. Caruso from that of Mr. Robertson as a matter of law. Nor do we find Mr. Robertson's negligence to be so extraordinary and unforeseeable as to relieve Mr. Caruso of liability as in ***Grainy v. Campbell***, 425 A.2d 379 (Pa. 1981) (truck driver's awareness of potential danger to boy scouts on the road created by contractor and gas company's obstruction of the berm relieved contractor and gas company of liability for negligence when the driver struck one of the scouts); ***see*** Restatement (Second) of Torts § 447. Since it was undisputed that Mr. Robertson did not slow down, it is reasonable to infer that he was unaware of or could not see the disabled vehicles in the road. A jury could reasonably find the second impact to be a normal consequence of the perilous situation created by Mr. Caruso's negligence.

Finally, Mr. Caruso's contention that the verdict is not supported by the evidence is refuted by the record. The jury obviously rejected Mr. Caruso's position that Mr. Robertson was the only person responsible for Mr. Hennessy's injury. Judgment n.o.v. was properly denied.

Mr. Caruso claims that a new trial is warranted as the verdict was against the weight of the evidence. He alleges that, "it is unjust that the jury would find against Caruso as a joint tortfeasor when Plaintiff admitted that he was not injured at all in the Caruso accident." Appellant's brief at 51. Furthermore, he baldly argues that the jury's assignment of 45% causal negligence to Mr. Caruso "is entirely inconsistent and disproportionate with the facts and can only be attributed to the Trial Court's errors." *Id*. We find no merit in either contention. The jury could reasonably find that Mr. Caruso's negligence placed Mr. Hennessy at risk for the very injury inflicted by Mr. Robertson. No new trial is warranted on this ground.

Finally, Mr. Caruso contends that the verdict is excessive and that the trial court abused its discretion in refusing his request for remittitur. He blames erroneous evidentiary rulings, jury instructions, and the verdict slip for contributing to the excessive $15 million award for pain and suffering. He argues further that the award was likely the result of "partiality, prejudice, mistake or corruption," or "arbitrary, speculative, or punitive," given the size of verdicts involving more catastrophic injuries. He avers that

the jury "undoubtedly sympathized with the hardships and complications that accompany the loss of a limb." *Id*. at 54.

The trial court has broad discretion in deciding whether to reduce a jury verdict. "Our standard of review in considering the reversal of a trial court's order denying a remittitur is to determine whether the trial court abused its discretion or committed an error of law in reaching such decision." *Paliometros v. Loyola*, 932 A.2d 128, 134 (Pa.Super. 2007); *see also Smalls v. Pittsburgh-Corning Corp.*, 843 A.2d 410 (Pa.Super. 2004). Remittitur is proper when "the verdict so shocks the sense of justice as to suggest the jury was influenced by partiality, prejudice, mistake, or corruption." *Haines v. Raven Arms*, 640 A.2d 367, 369 (Pa. 1994).

"We begin with the premise that large verdicts are not necessarily excessive verdicts. Each case is unique and dependent on its own special circumstances and a court should apply only those factors which it finds to be relevant in determining whether or not the verdict is excessive." *Paliometros*, *supra* at 134-35. The court may consider the following factors in making that determination:

> (1) the severity of the injury; (2) whether the Plaintiff's injury is manifested by objective physical evidence or whether it is only revealed by the subjective testimony of the Plaintiff (and, herein, the court pointed out that where the injury is manifested by broken bones, disfigurement, loss of consciousness, or other objective evidence, the courts have counted this in favor of sustaining a verdict); (3) whether the injury will affect the Plaintiff permanently; (4) whether the Plaintiff can continue with his or her employment; (5) the size of the Plaintiff's out-of-

pocket expenses; and (6) the amount Plaintiff demanded in the original complaint.

**Paliometros**, **supra** at 134-135 (quoting **Mineo v. Tancini**, 502 A.2d 1300, 1305 (Pa.Super. 1986)).

The trial court characterized Mr. Hennessy's injury as extremely painful, permanent, and one that "will almost certainly cause complications in the future." Trial Court Opinion, 4/10/14, at 16-17. In light of Mr. Hennessy's life expectancy of more than forty years, the court concluded that the verdict "simply was not excessive." **Id**. at 16.

Since we have concluded that there is no evidence of trial court bias or error in the trial court's evidentiary rulings, jury instructions, and refusal to apportion damages, we find no support for Mr. Caruso's contention that the trial court's failings fueled the large compensatory damage award. Furthermore, while the award is very high, we note that Mr. Hennessy's stipulated past and future medical and personal care bills are also very high, totaling $4,145,904.17. Mr. Caruso did not dispute the economic damages.

Dr. George A. Knod testified regarding the multiple fractures of the right tibia, large wounds, a degloving injury to that lower leg, a ruptured and torn Achilles tendon, and a foot drop injury. N.T., 5/21/13, at 20-21. In addition, Mr. Hennessy sustained significant injuries to his left leg. His anterior cruciate ligament in his left knee was completely ruptured, he had bleeding in his left thigh and internal bleeding throughout the pelvis. **Id**. Mr. Hennessy endured multiple surgeries for the fractures and ACL injury,

debridement, and surgery for a blood clot in his left leg. The amputation occurred on August 24, 2009.

The amputation injury is permanent, manifested by objective physical evidence, and very serious. Dr. Knod testified without challenge that, "Once you lose the knee joint, you lose function. You lose all functionality to walk and, in fact, it is easier to walk with two below-the-knee prostheses than just one above-knee prosthesis." *Id*. at 33. Mr. Hennessy's personal experience only confirmed the expert's prediction. At the time of trial, he was already on this third prosthesis and he could not wear it for more than a few hours. Dr. Knod explained that Mr. Hennessy continued to have difficulty with the fit of the prosthesis. With activity, he could only tolerate it for twenty to thirty minutes. *Id*. at 35. The physician stated that Mr. Hennessy would have to use a wheelchair on a daily basis for prolonged mobility. *Id*. at 36. He suffered phantom pain in the missing limb and his forced reliance upon crutches was causing overuse injuries to his back, shoulder, arms, and left knee. Generally, the evidence confirmed that a young man like Mr. Hennessy with a normal life expectancy would find himself increasingly dependent on others for personal care as he prematurely aged.

Mr. Hennessy described the embarrassment and humiliation he endures due to the disfigurement. People look at him differently, and "[t]hat bothers me." *Id*. at 87. He told the jury he "would love to be able to play

golf again." *Id*. at 91. He used to play sports for recreation with friends and expressed hope that the issues with his prosthesis would be resolved so that he could resume those activities. *Id*. at 90. Given the aforementioned evidence, we find no abuse of discretion on the part of the trial court in denying the remittitur.

Judgment affirmed.

Judge Ott joins the Memorandum.

Judge Strassburger files a Concurring Memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/24/2014